Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CARTER,<br><br>     Plaintiff,<br><br>   vs.<br><br>RESOLUTE FOREST PRODUCTS INC., DUNCAN K. DAVIES, BRADLEY P. MARTIN, RANDALL C. BENSON, SUZANNE BLANCHET, JENNIFER C. DOLAN, REMI G. LALONDE, ALAIN RHÉAUME, and MICHAEL S. ROUSSEAU,<br><br>     Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, James Carter ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Resolute Forest Products Inc. ("Resolute" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

result of Defendants' efforts to sell the Company to Domtar Corporation ("Domtar") and Karta Halten B.V. ("Karta Halten"), affiliates of Paper Excellence B.V. ("Parent"), through merger vehicle Terra Acquisition Sub Inc. ("Merger Sub" and collectively with Domtar, Karta Halten, and Parent, "Paper Excellence") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 6, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Resolute's common stock will be converted into the right to receive $20.50 in cash, without interest and one contingent value right ("CVR") entitling the owner to a share of the potential refund of deposits made in respect of softwood lumber duties paid by the Company to the U.S. Treasury as of June 30, 2022.

3.      Thereafter, on August 5, 2022, Resolute filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement Statement") with the SEC in support of the Proposed Transaction

4.      The Proposed Transaction is unfair for a number of other reasons.  Significantly, the Preliminary Proxy Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" without explanation as to whether a committee of disinterested directors was formed to evaluate the Proposed Transaction and if so, what powers they had in doing so.

5.      Further, the Preliminary Proxy describes an insufficient process in which no pre-transaction market check was performed to search for potentially interested third parties and evaluate strategic alternatives.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act, on August 5, 2022, Defendants caused to be filed the materially deficient Preliminary Proxy Statement.  The Preliminary Proxy Statement is materially deficient, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Resolute and Paper Excellence, provided by Resolute and Paper Excellence management to the Board's financial advisor CIBC World Markets Corp. ("CIBCWM") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by CIBCWM and provided to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.      Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Resolute stockholder.

10.     Defendant Resolute together with its subsidiaries, operates in the forest products industry in the United States, Canada, Mexico, and internationally. Resolute is incorporated in

Delaware and has its principal place of business at 1010 De La Gauchetière Street West, Suite 400, Montreal, Quebec, Canada H3B 2N2.  Shares of Resolute common stock are traded on the New York Stock Exchange under the symbol "RFP".

11.     Defendant Duncan K. Davies ("Davies") has been a Director of the Company at all relevant times.  In addition, Davies serves as the Chairman of the Board of Directors.

12.     Defendant Bradley P. Martin ("Martin") has been a director of the Company at all relevant times.

13.     Defendant Randall C. Benson ("Benson") has been a director of the Company at all relevant times.

14.     Defendant Suzanne Blanchet ("Blanchet") has been a director of the Company at all relevant times.

15.     Defendant Jennifer C. Dolan ("Dolan") has been a director of the Company at all relevant times.

16.     Defendant Remi G. Lalonde ("Lalonde") has been a director of the Company at all relevant times.  In addition, Lalonde serves as the Company's Chief Executive Officer ("CEO") and President.

17.     Defendant Alain Rhéaume ("Rhéaume") has been a director of the Company at all relevant times.

18.     Defendant Michael S. Rousseau ("Rousseau") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 11 - 18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Paper Excellence is a diversified manufacturer of pulp and paper, including printing and writing, packaging, and specialty papers.

21.     Non-party Domtar is a leading provider of a wide variety of fiber-based products including communication, specialty and packaging papers, market pulp and airlaid nonwovens.

22.     Non-party Karta Halten B.V. is an affiliate of Paper Excellence created to effectuate the merger.

23.     Non-Party Merger Sub is a wholly owned subsidiary of Paper Excellence created to effectuate the Proposed Transaction.

## **JURISDICTION AND VENUE**

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

27.     Resolute is a global leader in the forest products industry with a diverse range of products, including market pulp, tissue, wood products and papers, which are marketed in over 60 countries. The company owns or operates some 40 facilities, as well as power generation assets, in the United States and Canada. Resolute has third-party certified 100% of its managed woodlands to internationally recognized sustainable forest management standards. The shares of Resolute trade under the stock symbol RFP on both the New York Stock Exchange and the Toronto Stock Exchange.

28.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the May 5, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted Adjusted EBITDA of $270 million and Q1 GAAP income of $210 million.

29.     Speaking on the positive results, CEO Defendant Lalonde said, "We further strengthened the balance sheet with significant cash generation and improved the competitiveness of our business with two tuck-in acquisitions," ….. "Our earnings and cash position reflect favorable pricing momentum in all of our segments, but the transportation network improvements were slower than expected, which led to lower sales volume and higher inventory levels. With our strong balance sheet and liquidity well over $1 billion, we benefit from enhanced flexibility to generate long-term value for shareholders and to drive sustainable economic activity in the communities where we operate."

30.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Resolute.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

31.     Despite this upward trajectory, the Individual Defendants have caused Resolute to enter into the Proposed Transaction without providing requisite information to Resolute stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

33.     Notably, the Company insiders agreed to a CVR which is contingent on the resolution of a lumber dispute between the United States and Canada. While acknowledging the uncertainty of recovery of the deposits underlying the CVR, the Preliminary Proxy fails to disclose adequate reasoning as to why it was necessary to negotiate an uncertain form of consideration as an alternative to up-front consideration on behalf of common stockholders.

34.     The Preliminary Proxy Statement is silent as to whether a committee of disinterested directors was created to run the sales process and if so, the specific powers the committee was given in evaluating a potential transaction.

35.     Additionally, the Preliminary Proxy Statement does not provide adequate reasoning as to why no market check was conducted to evaluate potential third party offers and strategic alternatives.

36.     Further, the Preliminary Proxy describes a rushed process in which no pre-transaction market check was conducted for potentially interested third parties.

37. Moreover, the Preliminary Proxy Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and Paper Excellence and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

38. It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

39. On July 6, 2022, Resolute and Paper Excellence issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **MONTREAL, CANADA – July 6th, 2022** – The Paper Excellence Group (the "Group"), through its wholly-owned subsidiary Paper Excellence Corporation ("Paper Excellence"), a global diversified manufacturer of pulp and specialty, printing, writing, and packaging papers, and Resolute Forest Products Inc. ("Resolute") (NYSE: RFP) (TSX: RFP), a global forest products company, have entered into an agreement under which Paper Excellence will acquire all of the outstanding common shares of Resolute stock.
>
> With this addition to its family of companies, the Paper Excellence Group will further build out its portfolio in North America following the successful acquisition of Paper Excellence last year.
>
> Patrick Loulou, vice chair and chief strategy officer of the Paper Excellence Group, commented, "We are excited to welcome Resolute and its employees to the Paper Excellence family. Resolute is an ideal fit for our long-term growth strategy. It complements our existing pulp, paper and packaging businesses and adds capabilities in lumber and tissue. We have seen firsthand that Resolute prides itself on its great people, strong assets and a culture of excellence going back more than two hundred years."
>
> Resolute will become a wholly-owned subsidiary of Paper Excellence, under the auspices of the Group, and continue to operate on a business-as-usual basis under

the Resolute name. The Resolute management team will remain in place at the company's headquarters. Considering the quality workforce available with Resolute and Paper Excellence, Montreal will become an important hub for the Group's North American businesses. Furthermore, the Group plans to retain Resolute's production locations and levels of jobs.

**Growing Together**

"With this transaction, Resolute will accelerate its growth as it gains access to more tools, capital and opportunities to pursue our ambitions with the combined resources of the Paper Excellence Group," stated Remi G. Lalonde, Resolute's president and chief executive officer. "This is good for employees and the communities where Resolute operates because we will continue to grow in a manner consistent with our core values of accountability, caring and trust that we hold dear. Together, we will form a stronger and more resilient, diversified forest products company, positioned to compete on a truly global scale, with a shared commitment to being a trusted business partner, dedicated to sustainability and to caring for its people and communities."

As part of its commitment to building a premier North American diversified forest products company and creating long-term growth, the Group intends to support Resolute management's existing growth strategy, focused on strategic investments in its lumber and pulp businesses, and maximizing the value of its paper and tissue businesses. It also plans to undertake a detailed feasibility study for the eventual conversion of Resolute's Gatineau, Quebec, newsprint mill to the production of packaging paper.

"This is a good example of how the Paper Excellence Group's diversified business, financial resources, and technical capabilities can open up new strategic avenues for assets that may otherwise face an uncertain future. This is but one example of our support and intention to implement significant investments aligned with Resolute's strategic plan for the future," concluded Mr. Loulou.

Furthermore, the Group intends to form long-term partnerships with one or more universities in Quebec and Ontario to spearhead innovation in the field of fiber-based biomaterials.

*Potential Conflicts of Interest*

40. The breakdown of the benefits of the deal indicate that Resolute insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have

secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Resolute.

41.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, the Preliminary Proxy Statement provides a partial accounting which fails to account for the value in which these shares will be exchanged as follows:

|  | Number of Shares of Company Common Stock Beneficially Owned | Percentage of Outstanding Company Common Stock |  |
|---|---|---|---|
| Randall C. Benson | 35,177 | | * |
| Suzanne Blanchet | 13,300 | | * |
| Duncan K. Davies | 3,360 | | * |
| Jennifer C. Dolan | 50,039 | | * |
| Sylvain A. Girard | 2,451 | | * |
| Yves Laflamme | — | | * |
| Remi G. Lalonde | 94,730 | | * |
| Bradley P. Martin | 65,101 | | * |
| Alain Rheaume | 70,600 | | * |
| Michael S. Rousseau | 90,600 | | * |
| Hugues Simon | 8,441 | | * |
| Richard Tremblay | 140,499 | | * |
| Jacques P. Vachon | 3,785 | | * |
| **All Directors and Executive Officers as a group** | 859,828 | 1.12 | |

42.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  These benefits are accounted for as follows:

| Non-Employee Director | Company DSUs/RSUs (#) | Value of Company DSUs/RSUs ($) |
|---|---|---|
| Randall C. Benson | 173,129 | 3,549,145 |
| Suzanne Blanchet | 55,304 | 1,133,732 |
| Duncan K. Davies | 28,707 | 588,494 |
| Jennifer C. Dolan | 25,061 | 513,751 |

| | | |
|---|---|---|
| Bradley P. Martin | 525,409 | 10,770,885 |
| Alain Rheaume | 138,156 | 2,832,198 |
| Michael S. Rousseau | 138,156 | 2,832,198 |

| Executive Officer | Company RSUs (#) | Value of Company RSUs ($) | Company PSUs (#) | Value of Company PSUs ($) | Estimated Total Cash Consideration ($) |
|---|---|---|---|---|---|
| Sylvain A. Girard | 41,058 | 841,689 | 46,308 | 949,314 | 1,791,003 |
| Lori Kilgour | 60,593 | 1,242,157 | 82,406 | 1,689,323 | 2,931,480 |
| John Lafave | 85,909 | 1,761,135 | 120,389 | 2,467,975 | 4,229,110 |
| Remi G. Lalonde | 237,391 | 4,866,516 | 308,030 | 6,314,615 | 11,181,131 |
| Stephanie Leclaire | 33,832 | 693,556 | 47,649 | 976,805 | 1,670,361 |
| Patrice Minguez | 121,508 | 2,490,914 | 170,783 | 3,501,052 | 5,991,966 |
| Daniel Ouellet | 72,919 | 1,494,840 | 104,283 | 2,137,802 | 3,632,642 |
| Hugues Simon | 57,176 | 1,172,108 | 67,569 | 1,385,165 | 2,557,273 |
| Richard Tremblay | 100,769 | 2,065,765 | 141,052 | 2,891,566 | 4,957,331 |

43.     Moreover, certain employment agreements with certain Resolute executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, which is compensation not shared by Plaintiff.  These amounts are disclosed as follows:

| Name | Cash ($) | Equity ($) | Perquisites/ Benefits ($) | Total ($) |
|---|---|---|---|---|
| Sylvain A. Girard | 2,262,530 | 1,791,003 | 15,175 | 4,068,708 |
| Remi G. Lalonde | 4,082,829 | 11,181,131 | 448,704 | 15,712,664 |
| Hugues Simon | 2,307,245 | 2,557,273 | 15,175 | 4,879,692 |
| Richard Tremblay | 2,014,397 | 4,957,331 | 27,134 | 6,998,861 |
| Yves Laflamme | — | 8,200,000 | — | — |
| Jacques P. Vachon | — | 4,648,806 | — | — |

44.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries

from acting solely in the best interests of the Company's stockholders.

45.     Thus, while the Proposed Transaction is not in the best interests of Resolute, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

46.     On August 5, 2022, the Resolute Board and Paper Excellence caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

47.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.   Adequate reasoning as to why Company insiders agreed to a provision granting a CVR rather than up-front consideration;

b.   Specific information regarding whether a committee of the Board was created to run the sales process and if so, what powers the board had;

c.   Adequate information as to why no market check was performed;

d.   Whether the confidentiality agreements entered into by the Company with Paper Excellence differed from any other unnamed confidentiality agreement

entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Paper Excellence, would fall away; and

f.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

_Omissions and/or Material Misrepresentations Concerning Resolute's Financial Projections_

48.  The Preliminary Proxy Statement fails to provide material information concerning financial projections for Resolute provided by Resolute management to the Board, CIBCWM, and relied upon by CIBCWM in their analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

49.  The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Resolute management provided to the Board and CIBCWM. Courts have uniformly stated that "projections … are probably among the most highly-prized

disclosures by investors.  Investors can come up with their own estimates of discount rates or []
market multiples.  What they cannot hope to do is replicate management's inside view of the
company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del.
Ch. 2007)

50.     With regard to the *Forward-Looking Financial Information* prepared by Resolute,
the Preliminary Proxy Statement fails to disclose material line items for important metrics.

      a.  EBITDA after cash deposits for duties, including all underlying inputs, metrics,
and assumptions, including specifically: earnings (including the specific
included sub-metrics of account corporate selling, general and administrative
expense), interest expense, income taxes, depreciation and amortization, and
the value of cash deposits for countervailing and anti-dumping duties; and

      b.  Unlevered Free Cash Flow, including all underlying inputs, metrics, and
assumptions, including specifically: cash deposits for duties, estimated cash
taxes, and other cash flow items.

51.     This information is necessary to provide Plaintiff in his capacity as a Company
stockholder a complete and accurate picture of the sales process and its fairness.  Without this
information, Plaintiff is not fully informed as to Defendants' actions, including those that may
have been taken in bad faith, and cannot fairly assess the process.

52.     Without accurate projection data presented in the Preliminary Proxy Statement,
Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of CIBCWM's
financial analyses, or make an informed decision whether to vote in favor of the Proposed
Transaction.  As such, the Board has violated the Exchange Act by failing to include such
information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by CIBCWM*

53.     In the Preliminary Proxy Statement, CIBCWM describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

54.     With respect to the *Valuation of the CVR* analysis, the Preliminary Proxy Statement fails to disclose the following:

    a.   The inputs and metrics used to select a range of probability of recovery of 0-80%; and

    b.   The Company's weighted average cost of capital.

55.     With respect to the *Publicly Traded Comparable Companies Analysis* section, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific metrics for each company compared;

    b.   The inputs, metrics, and assumptions used to determine an EV/2022E EBITDA multiple range of 1.1x to 5.7x for the industry generally;

    c.   The specific inputs, metrics, and assumptions used to determine an EV/2022E EBITDA multiple range of 2.2x to 2.7x for the companies compared;

    d.   The specific enterprise value for the Company; and

    e.   The following sub metrics used to calculate the Company's value per share:

        i.    The Company's net debt;

        ii.   The net deficit of the pension fund;

       iii.    Minority interest; and

       iv.    The value of cash and cash equivalents; and

       v.    Any other adjustments deemed appropriate for this analysis.

56.    With respect to the *Precedent Transactions Analysis* section, the Preliminary Proxy Statement fails to disclose the following:

    a.   The value of each transaction compared;

    b.   The date on which each transaction compared closed;

    c.   The specific metrics for each precedent transaction analyzed;

    d.   The inputs, metrics, and assumption used to determine a value reference multiple range of 1.0x to 8.4x;

    e.   The specific inputs and assumptions used to determine an enterprise value/ LTM EBITDA multiple range of 2.6x to 3.1x; and

    f.   The following sub metrics used to calculate the Company's value per share:

       i.    The Company's net debt;

       ii.    The net deficit of the pension fund;

       iii.    Minority interest; and

       iv.    The value of cash and cash equivalents; and

       v.    Any other adjustments deemed appropriate for this analysis.

57.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The inputs, metrics, and assumptions used to determine perpetual growth rates ranging from -1.0% to 1.0%;

    b.   The terminal value of the Company;

c.   The estimated value of the Company's tax assets;

d.   The inputs metrics, and assumptions used to determine discount rates ranging from 11.25% and 12.25%;

e.   The Company's weighted average cost of capital;

f.   The levered and unlevered betas for the Company;

g.   The tax rates utilized for the Company for purposes of this analysis;

h.   The adjustment used for the market risk premium; and

i.   The following sub metrics used to calculate the Company's value per share:

  i.   The Company's net debt;

  ii.   The net deficit of the pension fund;

  iii.   Minority interest;

  iv.   The value of cash and cash equivalents; and

  v.   Any other adjustments deemed appropriate for this analysis.

58.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

59.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Resolute stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

60.     Plaintiff repeats all previous allegations as if set forth in full herein.

61.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

62.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

63.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

67.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**<ins>(Against all Individual Defendants)</ins>**

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

70.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Resolute's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

72.     The Individual Defendants acted as controlling persons of Resolute within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Resolute to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Resolute and all of its employees.  As alleged above, Resolute is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act and disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 31, 2022                    **BRODSKY & SMITH**

                                   By:  */s/ Evan J. Smith*
                                          Evan J. Smith
                                          240 Mineola Boulevard
                                          Mineola, NY  11501
                                          Phone:  (516) 741-4977
                                          Facsimile (561) 741-0626

                                          *Counsel for Plaintiff*